IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ERIC A. CLARK,                     )
                                   )
            Plaintiff,             )
                                   )
v.                                 )    Case No. CIV-10-378-RAW
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )

**REPORT AND RECOMMENDATION**

Plaintiff Eric A. Clark (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 12, 1963 and was 46 years old at the time of the ALJ's decision. Claimant completed his education through the tenth grade in special education classes. Claimant has worked in the past as a construction laborer and dump

truck driver. Claimant alleges an inability to work beginning January 1, 2008 due to limitations resulting from a left rotator cuff tear, advanced cortical atrophy, anxiety with panic attacks, high blood pressure, back and neck pain, arthritis, and basal cell carcinoma.

## Procedural History

On March 5, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 29, 2010, an administrative hearing was held before ALJ Michael Kirkpatrick in McAlester, Oklahoma. On May 17, 2010, the ALJ issued an unfavorable decision on Claimant's applications. On September 21, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual

functional capacity ("RFC") to perform a full range of light work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) improperly rejecting an attending physician's statement; (2) failing to reach the appropriate RFC based upon the hypothetical question posed to the vocational expert; (3) failing to consider all of Claimant's impairments; (4) failing to include Claimant's mental impairments in his RFC evaluation; and (5) accepting the testimony of the VE when conflicts with the Dictionary of Occupational Titles ("DOT") and the expert's testimony existed.

**Consideration of Statement of Physicians**

Claimant contends the ALJ failed to provide adequate weight to the opinions of two physicians and one counselor and failed to consider the statements of three consultants on Claimant's medical conditions. On March 30, 2010, Dr. Mark Rogow, Dr. Eric Broadway, and Mr. Ray Walker, all with the Stigler Health and Wellness Center, completed Attending Physician's Statement forms on Claimant. Dr. Rogow began treating Claimant on January 25, 2010 and diagnosed him with cerebral atrophy, presenile dementia, anxiety disorder, and large basal cell carcinoma. He found Claimant's conditions were severe enough to interfere with attention and concentration, to affect his ability to tolerate work

5

stress, would require Claimant to take unscheduled breaks during an 8 hour workday and the impairments were likely to produce good days and bad days. He also estimated Claimant would be required to take more than four days off work per month due to his condition. Dr. Rogow did not expect Claimant's condition to improve for the better in the future and opined that Claimant could not work 8 hours per day or 40 hours per week. (Tr. 315).

The ALJ rejected Dr. Rogow's opinion, finding that he failed to provide any medical findings to support his statement and that he has not treated Claimant on a regular basis for any mental impairments. (Tr. 19). This Court disagrees. The record indicates the Dr. Rogow had seen Claimant on four occasions prior to offering the Attending Physician's Statement. On the January 25, 2010 visit, Dr. Rogow specifically noted Claimant's observed emotional and mental problems. (Tr. 305). The ALJ generally rejected Dr. Rogow's opinions as being inconsistent with the record without specifically stating the conflicting record. This Court finds Dr. Rogow was improperly rejected as a treating physician.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the

opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. §

7

404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

It is not apparent from the decision that the ALJ went through the required Watkins analysis since it is unclear he considered Dr. Rogow a treating physician. On remand, the ALJ shall re-evaluate Dr. Rogow's opinion, state the weight the ALJ deems he should give the opinion, and specifically reference any contradictory evidence which would diminish the weight afforded to it. He shall also specifically consider the supporting medical records generated by Dr. Rogow.

Mr. Ray Walker is acknowledged by the ALJ to be a licensed clinical social worker. His opinion is reflected on the Attending Physician's Statement dated March 30, 2010. He first treated Claimant on February 23, 2010, finding him to suffer from panic disorder without agoraphobia and dementia, NOS. Mr. Walker found the same restrictions as Dr. Rogow on the form except that he found

8

the patient was not likely to experience good days and bad days and did not estimate the amount of time required for Claimant to be absent from work. (Tr. 314). The ALJ rejected Mr. Walker's statement with the same broad stroke that he rejected Dr. Rogow's opinion. He found Mr. Walker worked under Dr. Rogow and that his opinions were encompassed in Dr. Rogow's statement. (Tr. 19). The record does not reflect this relationship between Dr. Rogow and Mr. Walker. While Mr. Walker's opinion is not entitled to the same weight as a treating physician, it is entitled to some consideration as an "other source." Soc. Sec. R. 06-03p. The ALJ shall re-evaluate Mr. Walker's opinion on remand and give specific reasons for rejecting it on the merit of its content.

Dr. Broadway first treated Claimant on April 8, 2010 diagnosing him with panic disorder, generalized anxiety disorder, major depression, and presenile dementia, NOS. His restrictions were essentially the same as set out on Mr. Walker's statement. (Tr. 316). Dr. Broadway was rejected as a treating physician by the ALJ and his opinion was rejected entirely because Dr. Broadway failed to provide any medical findings to support his statement and he only attended Claimant on one occasion for one hour. (Tr. 19). Claimant argues Dr. Broadway should have been considered a treating physician because he had access to all other physicians' records a

the Stigler Center. While the ALJ's <u>Watkins</u> analysis is rather abbreviated, this Court does not disagree with the ALJ's characterization of Dr. Broadway as a non-treating physician. Still, his opinions are entitled to some weight and not a wholesale rejection. The ALJ shall re-evaluate Dr. Broadway's opinion in light of the medical records from the Stigler Center.

Claimant also contends the ALJ ignored the opinions of Dr. Patricia Walz, a consultative physician. Dr. Walz completed a Mental Diagnostic Evaluation on May 28, 2009. She found Claimant to suffer from panic disorder with agoraphobia, major depression, recurrent, moderate to severe without psychosis, dependent traits, and a GAF of 45 to 50. (Tr. 244-45). She determined Claimant had an intellectual functioning of 75 to 85 and that his concentration, ability to communicate and speed of information processing was impaired by his anxiety. She found he had a dramatic presentation but was not thought to be malingering. Dr. Walz recommended an intellectual assessment. (Tr. 245).

The ALJ acknowledged Dr. Walz's opinion but did not necessarily follow her findings, instead substituting his own opinion that he "finds it difficult to believe that claimant cannot work due to low intellectual functioning or an inability to read." He finds that Claimant's mental impairments are not supported by

the record due to his minimal treatment for emotional distress. (Tr. 20).

Dr. Jimmie Taylor completed a physical examination on Claimant, concluding he suffered from panic attacks, left rotator cuff tear, illiteracy, hypertension, carcinoma, question of enlarged prostate, agoraphobia, and change of extraoccular motion left. He recommended opthomology, psychological, neurological, and urology consults. (Tr. 266). Again, the ALJ recognized Dr. Taylor's assessment but did nothing with his findings, leading to the conclusion that he did not materially consider them.

A Psychiatric Review Technique was completed by Dr. Tom Shadid on July 6, 2009. He found marked limitations in Claimant's ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public. (Tr. 260-61). He further found "although his presentation is sometimes dramatic his allegations and symptoms appear reasonably consistent with history and diagnoses are considered substantially credible." (Tr. 262). These findings upon which the ALJ did rely substantiate much of the findings of the other physicians referenced herein. The ALJ shall re-evaluate the opinions of the treating and consultative physicians and state his reasons for accepting or rejecting their findings, without

interjecting his own beliefs on medical matters.

### Hypothetical Questioning of Vocational Expert

This Court has reviewed Claimant's alleged errors in the single contested question the ALJ asked of the vocational expert and finds no error in the hypothetical posed, considering the position taken by the ALJ in relation to Claimant's impairments.

### RFC Evaluation

Claimant first contends the ALJ failed to consider the unscheduled breaks in his workday found by Dr. Rogow in reaching his RFC. Since the ALJ is to re-evaluate the opinion of Dr. Rogow, he should consider whether this restriction should be included in his RFC.

Similarly, Claimant essentially makes the same argument concerning the ALJ's failure to consider all of the physicians and mental health professionals who have rendered opinions on Claimant's condition in his RFC evaluation. The ALJ shall reconsider his findings on Claimant's mental impairments while re-evaluating the opinions of these professionals.

### Conflicts Between VE Testimony and DOT

In his testimony, the VE found Claimant could perform the jobs of bakery racker, poultry eviscerator, and hand bander. (Tr. 62-64). Claimant references the physical evaluation by Dr. Thurma

12

Fiegel in which she finds Claimant to be limited in reaching in all directions, including overhead. (Tr. 274). The DOT includes constant reaching for all three jobs referenced by the VE which Claimant could perform. This would appear to eliminate these jobs from consideration by the ALJ in reaching his determination. The ALJ shall reconsider his findings in this regard and solicit additional testimony from a VE in order to clarify the findings in this regard.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of February, 2012.

                                            */s/ Kimberly E. West*
                                          KIMBERLY E. WEST
                                          UNITED STATES MAGISTRATE JUDGE